KNOLL, J.,
DISSENTING
The majority concludes that the trial court was manifestly erroneous in its determination of the common intent of the parties, finding that the Bourgeoises knew before the exchange that Landry wanted 100% of the minerals, and that Landry thought he was getting 100% of the minerals in the act of exchange. After carefully reviewing the testimony of the Bourgeoises and Landry, I cannot agree with the majority that “there are no conflicts regarding this determination.”
*41 ■ The trial court specifically found in its written reasons:
“Landry is attempting by the correction deed to claim title to minerals entirely separate and apart from the 74 acre tract of land he acquired in the Buy and Sales Agreement and the act of exchange. The evidence shows that Landry knew at the time of negotiations that Bourgeois did not own all of the minerals. Moreover, he employed Attorney Sidney Horn to prepare all of the documents and examine an abstract on the property. Although Mr. Horn’s title opinions disclaim their usefulness concerning the mineral title since the abstract omitted the mineral title, both opinions discuss the mineral interests in some detail. Horn advised Landry that if he wished to obtain 100% minerals he should purchase some mineral interest from Bourgeois and all of his brothers and sisters, and also Maggie Lee Bourgeois, the mother of John Carroll Bourgeois, Jr.
The evidence also shows that Landry knew that the minerals were near the ten year prescriptive period, and also knew that Bourgeois had undertaken steps to reinscribe the minerals. The court believes that the strongest evidence against Landry’s contention that he was to acquire all of the minerals is set forth in Mr. Horn’s second opinion letter dated December 27, 1983, the same date as the act of exchange, where it is stated: ‘It is my understanding that you only intend to purchase whatever minerals Mr. Bourgeois, Jr. had.’ Moreover, Landry in cross-examination admitted as much when he testified that he thought he was getting future rights as to the minerals and was dissatisfied with what he got because he thought Bourgeois had delayed the closing to extend the minerals.”
These conclusions are further corroborated by the wording of the buy-sell agreement as well as the act of exchange.
The majority further relies on quoted testimony of John Bourgeois in which he stated that in a conversation with Landry he communicated that the reinscription of the mineral servitude would not affect the 74 acres. In so doing, the majority overlooks Bourgeois’ further explanation:
“Q. You also testified that you told Mr. Landry that at some point in time you were working for him, and you said, ‘I have to go — my uncle called; I have to go sign some documents,’ and he asked you if that affected his 74 acres?
A. Yes, sir.
Q. You said, ‘No’, it didn’t; is that correct?
A. Yes, sir.
Q. Why did you say that? What was your impression? Why did it affect—
A. Well, the reason it didn’t affect him is because Bobby [Bourgeois’ brother] wanted us to get together to sign it to keep it in the families. He didn’t want to separate — there was a few of them that wanted to separate it up and everybody have [sic] their own mineral interest and each own the land, you know, and he just wanted to keep it there, and I did and my sister. And a few of us decided we wanted to keep it together. And he had drawn up the same papers that he and my daddy did in ’73 just to keep it all in the family.
Q. You felt this would not affect the 74 acres?
A. No, sir, because if it did, Belin would have gotten my share of the 74 acres anyway. When they come to lease land, they always lease big parcels of land. He would have gotten my share of my 74 acres. He would have gotten his share which he was entitled to.”
This testimony, I find, more correctly reflects the trial court’s appreciation of the general understanding which Bourgeois had of the events surrounding the rein-scription of the mineral servitude, and fully supports the trial court’s determination of the factual issues presented.
The majority next determines that the 1985 “correction deed” was an act transla-tive of title. I disagree. The trial court properly addressed this issue when it concluded:
"... Landry contends that even if the correction deed did not correct a mutual *42 error in the original act of exchange, the correction deed is an act translative of title which is. sufficient to convey to him an interest in Bourgeois' mineral servitude. He points out that the correction deed states that for consideration received the plaintiffs ‘do hereby grant, bargain and sell unto Belin Landry, Jr.’ the described mineral interest. He contends that the correction deed meets all of the requirements of a valid sale in that the act described ‘the thing sold, the price and the consent.’ LSA-C.C. Art. 2439.
Putting aside the arguments by Bourgeois that the thing is not sufficiently described in the instrument, nor was there consent on his part, the court finds that the requirement of an adequate price is lacking.
The only consideration set forth in the correction deed itself was the original consideration recited in the act of exchange which is no consideration at all for the sale of the additional mineral rights. At trial Landry testified that the additional consideration for the execution of the correction deed was the payment of the note ahead of the payment schedule. This consideration was not stated in the correction deed. Nor does the court find that this would be adequate consideration for the sale of the additional mineral rights affecting additional property. The early payment of the note was equally advantageous to Landry. It released his remaining property from the vendor’s lien and saved him considerable interest payments over the remaining 28 years of the note.”
The original mineral servitude which Landry received in the act of exchange involved a 74 acre tract of land. With the execution of the “correction deed” Bourgeois’ mineral interest in 3,720 acres was affected. Clearly, there was no consideration in the “act of correction” which would be sufficient to find that instrument trans-lative of title.
For these reasons, I respectfully dissent.